530 So.2d 708 (1988)
Marie WICKLINE and Sharlotte Wickline Starc
v.
UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 56017.
Supreme Court of Mississippi.
August 31, 1988.
*710 Charles M. Merkel, Cynthia Mitchell, Merkel & Cocke, Clarksdale, for appellants.
Marc A. Biggers, Lonnie D. Bailey, Upshaw, Williams, Biggers, Page & Kruger, Greenwood, for appellee.
En Banc.

ON PETITION FOR REHEARING
PRATHER, Justice, for the Court:
The former opinion is withdrawn, and this modified opinion regarding the offset question is substituted.
Issues relating to automobile uninsured motorist coverage are in question in this appeal from the Circuit Court of Tate County. The wrongful death beneficiaries of Stacy Wickline, who are Marie Wickline and Sharlotte Wickline Starc, mother and sister respectively of Stacy Wickline, (Wickline), sued the United States Fidelity & Guaranty Company (U.S.F. & G.), to recover under uninsured motorist coverage. On motion and cross-motion for summary judgment, the trial court denied the stacking of uninsured coverages to a guest passenger from his host's insurer, but permitted recovery of the maximum per person uninsured motorist coverage to each of the death beneficiaries on the one vehicle involved, without setoff. Both parties appeal; appellant Wickline, with Class Two insured status, asserts that stacking of uninsured coverage should be allowed, while cross-appellant U.S.F. & G. denies that a claim for liability and uninsured motorist coverage can be made under the same policy in a one car accident.

I.
On August 5, 1981, Stacy Wickline was riding as passenger in a 1979 Thunderbird owned by Mills Carter, Jr. and operated by Mills Carter, III. The automobile collided with a vehicle parked on the side of the road, resulting in the death of Stacy Wickline. Neither Wickline nor the appellants are family members of the named insured's household, nor did they pay any premium to U.S.F. & G. No other information is afforded concerning the parked vehicle. The record indicates the accident resulted solely due to the negligence of Mills Carter, III.
The Carter car, driver and any passenger, were insured under a policy issued to Mills Carter, Jr. by U.S.F. & G., providing liability coverage of $10,000 each person and $20,000 per accident and uninsured motorist coverage of $10,000 each person and $20,000 per accident. Four separate cars owned by Mills Carter, Jr., were covered under that U.S.F. & G. policy and separate premiums for each car were paid by Mills Carter, Jr. including the 1979 Thunderbird in which Stacy Wickline was a passenger. The named insureds in the U.S.F. & G. policy were Mills Carter, Jr. and Patsy T. Carter.
Additionally, the plaintiffs and Stacy Wickline were insured under two of their own insurance policies issued to the Wicklines by State Farm Insurance Co. with uninsured motorist coverage of $10,000 per person, $20,000 per accident on each policy. The Wicklines settled this claim with State Farm in the amount of $30,000 under the uninsured motorist provisions of their policies.
Immediately after this accident, Stacy Wickline's survivors received $10,000 from U.S.F. & G. as limits of its liability per person coverage. However, the Wicklines filed suit in circuit court alleging each beneficiary was entitled to the maximum per person uninsured motorist coverages on the four Carter vehicles under the U.S.F. & G. policy, totaling $80,000.
*711 All parties stipulated that the plaintiffs' damages from the death of Stacy Wickline are sufficient to support an award up to $80,000, the only question being whether the U.S.F. & G. owes any additional sum.
Motions for summary judgments were presented by both parties. It was the Wicklines' position that each of the two plaintiffs were entitled to the $10,000 per person uninsured motorist limit on each of the four Carter vehicles, totaling an $80,000 award. The trial court denied this stacking of policies. On this issue, the trial court held that the limits of bodily injury liability on the 1979 Thunderbird involved in the accident were less than limits applicable to Stacy Wickline under her own policy and that the 1979 Thunderbird was therefore an "uninsured motor vehicle" as defined by the Mississippi Uninsured Motorist Act. The court further held that Marie Wickline and Sharlotte Wickline Starc, survivors, were "insureds" under the uninsured motorist provision of the U.S.F. & G. policy applicable to the 1979 Thunderbird and that under the terms of the policy, each was entitled to $10,000, a total of $20,000, which U.S.F. & G. could not reduce by the $10,000 coverage paid under the liability provision of the same policy.
Since the trial court held that the Wicklines could not "stack" the coverage for all four vehicles covered under the U.S.F. & G. uninsured motorist provision, the Wicklines appeal. U.S.F. & G. cross-appeals alleging error in the denial of its cross-motion for summary judgment asserting that the uninsured motorist coverage is not available to the Wicklines since, in a single car accident case, a guest passenger may not stack Class I uninsured motorist coverage provided by his insurer with Class Two uninsured motorist coverage provided by his host's insurer to cause an otherwise insured vehicle to become uninsured as to the host's uninsured motorist coverage.

II.
In Mississippi since 1967 uninsured motorist (UM) insurance coverage has provided recovery for injuries to insured injured persons in this state. An added feature to uninsured motorist insurance occurred effective January 1, 1980, when statutorily the Uninsured Motorist Act was amended to include an underinsured (UIM) motorist feature and thereby Mississippi's uninsured coverage requirement became an underinsured coverage. Miss. Code Ann. § 83-11-103(c)(i) (Supp. 1987).
Since enactment of these statutes, the courts have answered the questions concerning the rights and remedies of injured parties by uninsured motorists. Every policy of automobile liability insurance contains uninsured motorist coverage unless the policyholder rejects such coverage in writing. With the increased coverages available to policyholders, there have been new questions that have arisen. One such new question has been the combining or aggregating of coverages of different policies or of one policy covering separate vehicles for which plural premiums are paid. Government Employees Ins. Co. v. Brown, 446 So.2d 1002 (Miss. 1984). This method of aggregating the coverages of different policies applicable to an injured party is popularly referred to as "stacking," and this principle is the source of much litigation.
The instant case presents another factual situation involving a "stacking" question and seeks to apply the aggregating of claims to a class of insureds under uninsured motorist coverage who are guest passengers. In reaching a resolution to this question, this Court first notes the rules of construction applied by this Court in former cases.
On numerous occasions this Court has observed that uninsured motorist insurance is designed to provide innocent injured motorists a means of compensation for injuries which they receive at the hands of an uninsured motorist, see, e.g. Harthcock v. State Farm Mutual Ins. Co., 248 So.2d 456, 460-61 (Miss. 1971), and this Court has further noted that the Uninsured Motorist Act must be liberally construed to achieve this purpose. Stevens v. U.S.F. & G. Co., 345 So.2d 1041 (Miss. 1977); Parker v. Cottonbelt Ins. Co., Inc., 314 So.2d 342 (Miss. 1975); Lowery v. State Farm Mutual *712 Automobile Ins. Co., 285 So.2d 767 (Miss. 1973); Hodges v. Canal Ins. Co., 223 So.2d 630 (Miss. 1969). In addition to determining the statutory purpose of the Act, this Court has looked to the policy in question and construed ambiguous provisions against the insured and in favor of the injured party to accomplish the statutory purpose. GEICO v. Brown, supra; Hartford Accident & Indemnity Co. v. Bridges, 350 So.2d 1379 (Miss. 1977); Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267 (Miss. 1979). Another rule of construction applied in our cases has been to hold unenforceable any policy provision that seeks to reduce the coverage required by the statute. Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973).
With these guiding principles in mind, this Court now addresses this factual situation.

III.
The initial question raised in this appeal is whether the Carter vehicle is an uninsured, or underinsured, vehicle. The trial court analyzed this seminal question thusly:
Uninsured motorist insurance, also known as "family protection insurance" was conceived by the insurance industry and adopted in Mississippi to provide innocent injured motorists a means of recovery of all sums to which they are entitled from an uninsured motorist. Rampy v. State Farm Mutual Auto Insurance Company, 278 So.2d 428, 431-32 (Miss. 1973); Harthcock v. State Farm Mutual Automobile Insurance Company, 248 So.2d 456, 461-62 (Miss. 1971).
For uninsured motorist coverage to apply, the negligent tortfeasor's vehicle must be an "uninsured motor vehicle" as defined in the Mississippi uninsured motorist statute. Miss. Code Ann. § 83-11-103(c); McMinn v. New Hampshire Insurance Company, 276 So.2d 682 (Miss. 1973) [decided before amendment of Mississippi UM statute to include "under insured motorist coverage"].
Prior to amendment of the Mississippi uninsured motorist statute to include the concept of "underinsured motorist coverage", the Carter vehicle would not have been an uninsured motor vehicle. McMinn v. New Hampshire Insurance Company, 276 So.2d 682 (Miss. 1973); Chrestman v. State Farm Mutual Automobile Insurance Company, 276 So.2d 685 (Miss. 1973). In 1979, however, the Mississippi Legislature amended the Mississippi UM statute. Effective January 1, 1980, the statutory definition of "uninsured motor vehicle" was amended to include under insured motor vehicles. The statute now includes in the definition of "uninsured motor vehicle" a vehicle with liability insurance limits less than the UM limits applicable to the injured person:
Section 83-11-103. Definitions.

(c) The term `uninsured motor vehicle' shall mean:
.....
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured vehicle which are less than the limits applicable to the injured person provided under his uninsured motorist coverage... .
For the uninsured underinsured motorist provisions of the U.S.F. & G. policy come into play, the Carter Thunderbird must be an "uninsured motor vehicle" as defined in the statute. The answer to this question is determined by comparing the amount of uninsured motorist coverage available to the amount of liability insurance available.
The U.S.F. & G. policy provided $10,000.00 per person liability limits for the Carter Thunderbird. The policy also provided uninsured motorist limits in the amount of $10,000.00 per person. The plaintiffs, however, were also covered by the uninsured motorist coverage of their own two State Farm policies. The issue is: May the plaintiffs "stack" the limits of uninsured motorist insurance applicable under the State Farm policies with the U.S.F. & G. uninsured motorist limits for the purpose *713 of meeting the "uninsured motor vehicle" definition?
Under the Mississippi UM statute as amended, stacking of the injured person's limits is allowed for the purpose of qualifying the tortfeasor as an underinsured motorist.
The Mississippi statutory definition of uninsured motor vehicle, as amended to incorporate the underinsured concept, compares the limits of the tortfeasor's liability coverage to "the limits applicable to the injured person provided under his uninsured motorist coverage." Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1972) [emphasis added]. Whether the UM coverage of various policies and vehicles is "applicable to the injured person" must be determined in accordance with established Mississippi uninsured motorist law.
If an injured person is insured under more than one policy of uninsured motorist insurance, the limits of each such policy are "applicable" to him. Harthcock v. State Farm Mutual Automobile Insurance Company, 248 So.2d 456 (Miss. 1971). If he is injured while riding as a passenger, the uninsured motorist coverage of the vehicle in which he is riding, in addition to that of his own vehicles, is "applicable to the injured person". Southern Farm Bureau Casualty Insurance Company v. Roberts, 323 So.2d 536 (Miss. 1975).
The uninsured motorist limits of the State Farm policies, as well as those of the U.S.F. & G. policy, were "limits applicable to the injured person provided under his uninsured motorist coverage." Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1983). The bodily injury liability limits for the Carter Thunderbird were less than the limits applicable to the injured person provided under his uninsured motorist coverage. The Carter vehicle, therefore, was an uninsured motor vehicle as defined by the Mississippi Uninsured Motorist Act and the trial court is affirmed on this holding on the cross-appeal.

IV.

WERE STACY WICKLINE AND PLAINTIFFS "INSUREDS" UNDER THE UNINSURED MOTORIST COVERAGE OF EACH OF THE FOUR (4) CARTER VEHICLES COVERED BY THE U.S.F. & G. POLICY SO AS TO ENTITLE THEM TO "STACK" THE UNINSURED MOTORIST COVERAGE OF EACH VEHICLE?
The question presented here is whether a guest passenger can aggregate the owner's coverages on the owner's other vehicles. The trial court first addressed the status of Stacy Wickline as an "insured," and concluded that the Wicklines were "insureds" under the U.S.F. & G. policy only as to the 1979 Thunderbird in which Wickline was a passenger and that they could not stack the coverages of the other three Carter vehicles. Controlling to the determination of this question are (1) the uninsured motorist statute Miss. Code Ann. 83-11-101 et seq., and (2) the U.S.F. & G. policy. The pertinent statutory sections are as follows:
No automobile liability insurance policy ... shall be issued ... unless it contains an endorsement ... to pay the insured ... damages for bodily injury or death from the owner or operator of an uninsured vehicle.
Miss. Code Ann. § 83-11-101(1).
... .
The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.
Miss. Code Ann. § 83-11-103(b).
The uninsured motorist provision of the U.S.F. & G. policy reads as follows:
Part C Uninsured motorist coverage

*714 We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of "(1) bodily injury sustained as a covered person...."
"Covered person" as used in this endorsement means: (1) you or any family member; (2) any other person occupying your covered auto; (3) any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in (1) or (2) above.
The trial court determined that the statute created two classes of insured: (1) Class One insureds encompass "the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise." Clearly, Stacy Wickline did not come within this class. The trial court then determined Wickline did come within the remaining statutory definition of insureds which category is referred to as Class Two insureds and includes a guest passenger. The analysis applied by the trial court was that, since Wickline had no connection with the other three Carter vehicles and was a Class Two insured, no stacking would be permitted.
This Court's earlier cases talk much of Class One and Class Two insureds. See Aetna Casualty & Surety Company v. Barker, 451 So.2d 731 (Miss. 1984); Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1974). Careful study of those cases makes clear that this Court looked too much to the decisions of other states, particularly Virginia [Allstate Insurance Co. v. Meeks, 207 Va. 897, 153 S.E.2d 222 (1967)] and too little to the language of the Mississippi statute. Recognizing that the statute controlled our decisions, this Court refined and clarified this state's law in the opinions in Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267 (Miss. 1979), and most recently in Brown v. Maryland Casualty Co., 521 So.2d 854 (Miss. 1987).
It is now clear that the question is purely and simply one of reading the statutes as written. First, who is an "insured"? There is no natural law definition of insured in uninsured motorist law, nor are we concerned with what the law ought to be. The judicial eye reads only the positive command of the statute. In relevant part § 83-11-103(b) defines "insured" as "a guest in such motor vehicle to which the policy applies, or the personal representative of [such guest]."
The U.S.F. & G. policy in issue applied to the 1979 Thunderbird owned by Mills Carter, Jr. Stacy Wickline was a guest in that motor vehicle. Marie Wickline and Sharlotte Wickline Starc are her personal representatives and are thus "insureds" within § 83-11-103(b).
But can they stack?
Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking here sought, i.e., stacking multiple coverages within a single policy, has been mandated in Brown, Pearthree and Hartford Accident & Indemnity Co. v. Bridges, 350 So.2d 1379 (Miss. 1977). See also St. Arnaud v. Allstate Insurance Co., 501 F. Supp. 192 (S.D.Miss. 1980). As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.
No one would question stacking were Mills Carter, Jr., the named insured, the plaintiff. A combined reading of Brown, Pearthree and Bridges establishes as much. Are Stacy Wickline's personal representatives insureds of any less status than Carter? No, not if the statutory definition be respected. But it may be argued that stacking is only just in Carter's case because he paid the multiple premiums and this entitles him to the multiple coverages. Stacy Wickline paid no premiums. The point loses force when it is remembered that no third party beneficiaries give the consideration that yields an obligation he may of right enforce. Here Mills Carter, Jr., paid the premiums for the benefit of all insureds, including the statutory UM third party beneficiary Stacy Wickline. The advantage *715 to U.S.F. & G. from denying stacking here would be economically identical to that condemned in so many other contexts.
In the end this Court reverses and renders as to this issue on the direct appeal, and does so because the operative provisions of the Mississippi Uninsured Motorists Act have been declared as a matter of positive law to provide that all classes statutory insureds may recover of the UM insurer all amounts he or she may be entitled to recover as damages from the uninsured motorist, limited only by the limits of UM coverage multiplied by the number of vehicles insured in the policy. This Court can not on principle distinguish today's case from Brown, Pearthree and Bridges, which we regard as settling the law in this area.

V.

WERE EACH OF THE HEIRS OF STACY WICKLINE ENTITLED TO RECOVER THE PER PERSON LIMITS UNDER THE AGGREGATED UM COVERAGES?
Appellant, in support of the lower court opinion, argues that U.S.F. & G. cannot retreat from the broad language of the UM provision entitling the plaintiffs (Mrs. Wickline and Mrs. Starc) to each recover as a covered person because of injuries sustained by a covered person (Stacy Wickline).
Appellee contends that the derivative nature of the plaintiffs' claim prohibits recovery of $10,000 by each plaintiff in this case and that, if UM coverage is available, it is limited to the amount available under the "per person" limits for Stacy Wickline.
The limit of liability set forth in the U.S.F. & G. policy involved in the case at bar reads as follows:
LIMIT OF LIABILITY.
The limit of bodily injury liability shown in the schedule or in the Declarations for `each person' for Uninsured Motorist Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one accident. Subject to this limit for `each person', the limit of liability shown in the schedule or in the declarations for `each accident' for Uninsured Motorist Coverage, is our maximum limit of liability for all damages for bodily injury resulting from any one accident. The limit of property damage liability shown in the schedule or in the Declaration for `each accident' for Uninsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident.

This is the most we will pay regardless of the number of: (1) Covered persons; (2) claims made; (3) vehicles or premiums shown in the declaration; (4) vehicles involved in the accident. (Emphasis supplied).
This Court agrees with the cross-appellant U.S.F. & G. that each plaintiff was not entitled to recover "per person" limits under the policy. The plaintiffs' status as insureds is because of their status as wrongful death beneficiaries of Stacy Wickline under Miss. Code Ann. § 11-7-13 (Supp. 1987). The wrongful death statute provides a derivative action by the beneficiaries, and those beneficiaries stand in the position of their decedent. The Mississippi Act specifically provides coverage in the case of wrongful death. Miss. Code Ann. § 83-11-101(1); Pearthree I, 373 So.2d 267 (Miss. 1979).
This holding is in accord with Old Security Casualty Insurance Company v. Clemmer, 455 So.2d 781 (Miss. 1984), in which this Court held that where only one person sustained bodily injury the per person limitation applied. On the contrary, if two or more persons sustain bodily injury, the "per occurrence" clause of the policy comes into play.
In the instant case, the plaintiffs' right of action accrues because of the death of Stacy Wickline and her heirs at law stand in her position in this lawsuit. This Court, therefore, reverses the decision of the trial court insofar as it permitted full recovery by each plaintiff. Their total recovery is limited to that amount to which Stacy Wickline would have been entitled, to be shared equally between them.
*716 This decision is in line with our former cases, Pearthree I, supra, and Overstreet v. Allstate Insurance Company, 474 So.2d 572 (1985). In both cases the plaintiffs were wrongful death beneficiaries claiming an equal share.
Pearthree, supra, acknowledged that the policy definitions of insureds were broader than that required by the UM statute. The additional policy definition included in Pearthree included a "person authorized by law to receive such payment or to a person legally entitled to recover damages which the payment represents." That broad definition of Pearthree and Overstreet is not applicable here. The relevant part of this factual situation is that Wickline, as a passenger, was the "one covered person" and that benefits available to his heirs are derived from his status and limited to a single covered person's benefits, to be equally shared between them. This Court distinguishes those cases from the situation before us.
However, the fact that the plaintiffs in Pearthree and Overstreet acknowledged that their claim was a derivative action is obvious. It is more clearly set forth in Pearthree II, U.S.F. & G. Co. v. Pearthree, 389 So.2d 109 (Miss. 1980), where the plaintiff Pearthree was only one of five wrongful death beneficiaries suing for damages. The widower and three minor children had settled their claim with the insured, and this Court held that Pearthree was not claimant for the other wrongful death beneficiaries, but that her claim was limited as one of five beneficiaries under her pleadings and proof. However, the Court acknowledged that her recovery would not necessarily be limited to a twenty percent recovery of the total amount payable under the policy since the policies in question presented no percentage limitation. The Court noted that this imbalanced payment condition could result when a settlement was made with other beneficiaries without a court administration of the deceased's estate. The insurer had not exhausted its total liability, and therefore, Pearthree's recovery was not limited to one-fifth of the total liability.
The Overstreet case represents an opposite situation where the insurer did pay all of its liability to the insured's widow without court administration and the insured's five children sought to share in the benefits. This Court upheld the insurer's right to pay under its contract "facility of payment" clause to a person authorized to receive the total payment. The opinion declined to address a new argument at the appellate stage regarding the "per accident" limitation under the policy which might have required the insurer to pay additional monies to the five children. This was the factual situation again because the insurer failed to ascertain the heirs-at-law before payment of benefits to less than all heirs.
The facts of these cases, Pearthree and Overstreet, are situations in which multiple legal actions were filed. Such is not the case here. This Court therefore holds that the "per person" limits of liability apply in this case, rather than "per accident". The trial court is therefore reversed and rendered as to this issue on the cross-appeal. The maximum stacked UM coverage available to appellants is $40,000.00.

VI.
The final issue addressed on appeal is an assertion that if the Mills Carter vehicle was presumed to be uninsured, U.S.F. & G. is entitled to an offset of liability payments made.
The U.S.F. & G. policy contained the following language in its limits of liability clause:
Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
(1) paid because of the bodily injury or property damage by or on behalf of persons or organizations who may be responsible. This includes all sum paid under part A (liability) of the policy; ...
The lower court found that under established Mississippi statutory case law that defendant could not reduce the uninsured motorist coverage by amounts paid under the liability portions of the same policy.
*717 Recently this Court in State Farm v. Kuehling, 475 So.2d 1159 (Miss. 1985) allowed offset for uninsured motorist policy coverage for a $10,000 amount received from the tortfeasor's liability carrier. In that case the driver, Kuehling, was injured in an accident caused by an insured driver who drove an uninsured motor vehicle. Kuehling settled with the tortfeasor's insurer and then sought recovery from her own insurer for maximum amounts available under UM coverage. In Kuehling, this Court stated:
The statute [Miss. Code Ann. § 83-11-103 (1979)] in its present form in pertinent part is as follows:
(c) The term "uninsured motor vehicle" shall mean:
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage; or
This Court discerns no mandate by the 1979 amendments to section 83-11-101 et seq. to afford greater coverage to one injured by a tortfeasor who is totally injured by a tortfeasor who is partially insured than to one injured by a tortfeasor who is totally uninsured.
Section 83-11-111 allows insurers to contract with regard to excess coverage so long as the Mississippi rules regarding exclusion and stacking are not violated. The policy provision to which the parties in this suit contracted does not violate such rules nor does it act to reduce the coverage required by the statute.
The Court's Kuehling ruling was that the clear language of the policy and the statute provided for offsets of the uninsured motorist coverage by amounts paid by the tortfeasor's liability carrier. Kuehling is controlling in this case, and is consistent with Brown v. Maryland Casualty Co., supra.
Therefore, U.S.F. & G. is entitled to offset the total of its uninsured motorist coverage by $10,000.00 payment of the tortfeasor's liability carrier. Hence the plaintiffs may recover stacked liability of $40,000.00 less $10,000.00 offset from liability payments, or a net of $30,000.00.
The trial court is reversed on the offset question on cross-appeal. Interest at the legal rate on the $20,000.00 ordered by the circuit court from the date of the circuit court judgment is awarded, plus interest on the additional $10,000.00 awarded by this Court from the date of this Court's judgment of May 4, 1988. Appellant's petition for rehearing on the issue of prejudgment interest is denied.
REVERSED AND RENDERED ON DIRECT APPEAL; AFFIRMED IN PART, REVERSED IN PART AND RENDERED ON CROSS-APPEAL; DAMAGES IN THE AMOUNT OF $40,000.00 AWARDED TO APPELLANTS, LESS $10,000.00 OFFSET, AND NET AMOUNT OF $30,000.00, PLUS INTEREST.
APPELLEE'S PETITION FOR REHEARING DENIED AS TO THE STACKING ISSUE; GRANTED AS TO THE OFFSET ISSUE. APPELLANT'S PETITION FOR REHEARING DENIED AS TO THE PRE-JUDGMENT INTEREST ISSUE.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.