540 So.2d 22 (1989)
Albert WASHINGTON
v.
GEORGIA AMERICAN INSURANCE COMPANY.
No. 58137.
Supreme Court of Mississippi.
February 27, 1989.
*23 Minor F. Buchanan, Jackson, for appellant.
F. Ewin Henson, III, Upshaw, Williams, Biggers, Page & Kruger, Greenwood, for appellee.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
This case involves an appeal from the Circuit Court of Hinds County, where Georgia American Insurance Company was granted summary judgment on a declaratory judgment action involving its insured, Albert L. Washington. We find that the Circuit Court was correct in its ruling, and we affirm.

I.
On March 4, 1984, Albert Washington was riding in a car owned and operated by Donnie J. Watts when it was involved in a collision approximately two miles west of Raymond, Mississippi. The proximate cause of the collision was Watts' negligence. Watts' car, a 1975 Mercury Cougar, was covered under an insurance policy with Thurston Fire and Casualty Insurance Company which provided policy limits for bodily injury of $10,000 per person and $20,000 per accident. The other automobile involved in the collision was being operated by Minnie Stamps and had, including Ms. Stamps, fifteen occupants. After the accident, Thurston Fire and Casualty filed an interpleader action in the Chancery Court of the First Judicial District of Hinds County, for the purpose of distributing its limits of liability of $20,000 to the various individuals who were injured in the accident. As a result of this action the disbursement was made, and $463.34 was awarded to Washington.
On the date of the accident, Albert Washington had in force and effect an insurance policy with Georgia American Insurance Company, covering a 1978 Thunderbird. This policy provided uninsured motorist coverage with limits of $10,000 per person, and $20,000 per accident. On July 21, 1986, Georgia American filed a Complaint for Declaratory Judgment in the Circuit Court of Hinds County, First Judicial District, seeking a declaration that it owed Washington nothing under the uninsured motorist coverage in the policy. On November 10, 1986, Washington joined Georgia American in the Complaint for Declaratory Judgment, asking the court to find that Georgia American owed Washington $9,536.66 under the terms of the uninsured motorist provision of the policy, that sum being derived from the $10,000 per person policy limits less the $436.34 Washington had received earlier from Donnie Watts' insurance coverage. Both parties stipulated that the injuries received by Washington were substantial enough to support an award of damages in the amount of $9,536.66.
On November 18, 1986, Georgia American moved for summary judgment on the Complaint for Declaratory Judgment. Washington answered with a general denial, and then on December 22, 1986, moved for summary judgment on the Complaint for Declaratory Judgment. By written order dated February 6, 1987, the Circuit Court granted Georgia American's summary judgment motion and denied Washington's summary judgment motion, finding that Washington was not entitled to uninsured motorist coverage under his policy with Georgia American. From that decision Washington has appealed, assigning as error the Circuit Court's decision in favor of Georgia American.

II.
The question presented here is the following: Is Albert Washington entitled to collect uninsured motorist coverage provided by his policy with Georgia American? Georgia American, relying on a portion of the Uninsured Motorist Provision, Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1988), maintains that he may not. Washington, relying on a provision of his policy with Georgia American, argues that he is entitled *24 to the coverage, to the extent that the liability coverage of Donnie Watts was insufficient to compensate Washington for his injuries.
The language on which Washington relies can be found in his Georgia American policy in the section on uninsured motorist coverage under "CONDITIONS":
6. Other Insurance
With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under this endorsement shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
(emphasis added).
In conjunction with this language, Washington relies on Mississippi Farm Bureau Mutual Insurance Co. v. Garrett, 487 So.2d 1320 (Miss. 1986), which construed a policy containing language almost identical to that in Washington's policy under "Other Insurance". In Garrett, the insured was injured in a collision with an uninsured driver. 487 So.2d at 1322. Garrett and the other injured parties claimed against Dairyland Insurance, the uninsured motorist insurer of the driver of the car in which they had been riding. Garrett settled with Dairyland for $7,517.00 out of the $10,000 policy limits. He then filed suit against his insurer, Farm Bureau, for additional uninsured motorist coverage. Farm Bureau denied coverage, saying that Garrett had to exhaust the $10,000 uninsured motorist coverage from Dairyland before he could claim under his Farm Bureau policy. 487 So.2d at 1323. According to Farm Bureau, the difference between the $10,000 limits and the $7,517.00 Garrett settled for was "similar insurance available" to Garrett, and he could not as a result tap his own uninsured motorist coverage.
This Court began by announcing a rule of construction, "that the uninsured motorist statute ... and policies issued thereunder are to be construed liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage." 487 So.2d at 1323. The Court then interpreted the policy language "other similar insurance available." It found that, realistically, the settlement of $7,517.00 qualified as "any other similar insurance available" to Garrett, and that he could, after settling for that amount, claim against Farm Bureau. 487 So.2d at 1323-24. Considering the applicable rules of construction and policy language, this Court found that Farm Bureau's uninsured motorist coverage applied to the extent that Garrett's damages exceeded $7,517.00.
The policy that Albert Washington has with Georgia American contains a provision which is worded almost identically to the provision in Garrett. There is little doubt that in light of the holding in Garrett, the $436.34 that Washington received from Donnie Watts' liability coverage was "any other insurance available to the insured and applicable to such automobile as primary coverage." Georgia American argues that despite this, Washington is not entitled to uninsured motorist coverage, because as to Washington, Donnie Watts was not an uninsured motorist. Georgia American maintains that because of this difference, Garrett is inapplicable to the case at bar.
Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1988) states:
As used in this article:
... .
(c) The term "uninsured motor vehicle" shall mean:
... .
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage;
... .
The pertinent provision of the Georgia American policy § J II(E) states as follows:
(E) Underinsured Automobile. The term underinsured automobile means an automobile with respect to the ownership, *25 maintenance or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance; ... .
Uninsured motorist coverage is designed to provide innocent injured motorists with a means of compensation for injuries received because of an uninsured motorist. Harthcock v. State Farm Mutual Insurance Co., 248 So.2d 456, 461 (Miss. 1971). Both § 83-11-103(c)(iii) and policies issued under it will be liberally construed to achieve the purpose of compensation. Stevens v. U.S. Fidelity & Guaranty Co., 345 So.2d 1041 (Miss. 1977).
It does not appear that the coverage provided for by the policy is any broader than that provided for by § 83-11-103. Both the statute and Georgia American's policy provisions speak in terms of policy limits of coverage as to both the underinsured motorist and the insured injured claimant. It follows then that if Watts' vehicle does not qualify under § 83-11-103(c)(iii) as an uninsured motor vehicle, then the "Other Insurance" provision of the Georgia American policy is inapplicable in this case.
Two recent cases clarify what § 83-11-103(c)(iii) means by "uninsured" and "limits of coverage." In Wickline v. U.S. Fidelity & Guaranty Co., 530 So.2d 708 (Miss. 1988), this Court dealt with a case involving stacking of uninsured motorist coverage. On one hand, the Court stated that uninsured status may be determined "by comparing the amount of uninsured motorist coverage available to the amount of liability insurance available." 530 So.2d at 712. In the case at bar, all of Watts' liability coverage that was available to Washington once the interpleader action took effect was $436.34, so that when compared to Washington's $10,000.00 uninsured motorist coverage, it would appear that Watts' was driving an uninsured vehicle. However, when the Court in Wickline actually determined insured/uninsured status, it spoke only in terms of limits, as § 83-11-103(c)(iii) directs. 530 So.2d at 712-13. If one considers limits of coverage provided, Watts' would not be an uninsured motorist.
State Farm Mutual Automobile Insurance Co. v. Kuehling, 475 So.2d 1159 (Miss. 1985), dealt with whether an uninsured motorist carrier could require offset for payments of the tortfeasor's liability carrier. In answering this question, this Court proposed a series of hypothetical situations to show the operation of § 83-11-103:
When the tortfeasor is completely uninsured, and the insured carries $20,000.00 uninsured motorist limits, the insured is entitled to $20,000.00. When the tortfeasor has $10,000.00 in liability insurance, the insured carries $20,000.00 uninsured motorist, the insured is entitled to $10,000.00 from the tortfeasor and $10,000.00 from the insured for a total coverage of $20,000.00. When the tortfeasor and the insured have liability limits in equal amounts of $20,000.00, the insured is not entitled to uninsured motorist coverage under the statute but is entitled to the liability limits of $20,000.00 under its liability policy.

475 So.2d at 1162 (emphasis added). Federal courts in Mississippi and those interpreting Mississippi Law have construed § 83-11-103 in the same way. Herrod v. National Indemnity Co., 643 F. Supp. 956 (N.D.Miss. 1986); Wilson v. Nationwide Mutual Insurance Co., 667 F. Supp. 349 (N.D.Miss. 1987); State Farm Mutual Automobile Insurance Co. v. Eubanks, 785 F.2d 1346 (5th Cir.1986).
Other jurisdictions have handled the problem presented in this case in different ways. Some have explicitly by statute included in the definition of an uninsured motorist one whose liability coverage is less than the uninsured motorist coverage of the insured because of sums paid out to others injured besides the insured. Ga. Code Ann. § 56.407.1(b)(1)(D)(ii) (1988); Tex. Ins. Code Ann. art. 5.06-1(2)(b) (Vernon 1981); S.C. Code Ann. § 38-77-30(14)(b) (Law. Co-op. Supp. 1987); Colo. Rev. Stat. § 10-4-609(4)(b) (1987); Alaska Stat. § 28.20.445(h)(2) (1988). Other jurisdictions *26 have statutes very similar to § 83-11-103(c)(iii). These states are split as to whether they would allow recovery in a situation such as this. Those that would allow coverage cite as justification the avowed purpose behind uninsured motorist coverage and liberal rules of construction. Brown v. Erie Insurance Co., 35 Ohio App.3d 11, 519 N.E.2d 408 (1986); Smith v. State Farm Mutual Automobile Insurance Co., 479 So.2d 160 (Fla. Dist. Ct. App. 1985). Others would not allow coverage, maintaining that while the situation is not a good one, it should be remedied by the legislature, and the statute should be enforced as written. Rogers v. Tennessee Farmers Mutual Insurance Co., 620 S.W.2d 476 (Tenn. 1981); Emery v. State Farm Mutual Automobile Insurance Co., 195 Neb. 619, 239 N.W.2d 798 (1976).
We feel that we must, in this case, interpret the statute as it is written. Liberal rules of construction do not grant this Court license to re-write the statute. We realize the result is a harsh one, and we welcome the legislature's attention to this problem, as has been done in the aforementioned statutes. The judgment of the trial court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.