## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 94-CA-01238-SCT

*FIDELITY AND GUARANTY UNDERWRITERS, INC.*

*v.*

*JOHN L. EARNEST*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/94 |
| TRIAL JUDGE: | HON. FRANK ALLISON RUSSELL |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE E. DENT |
| ATTORNEYS FOR APPELLEE: | WILLIAM WALKER, JR. |
| | FRANK SHAW, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 9/11/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/2/97 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

### I. INTRODUCTION

¶1. This is an uninsured motorist (UM) case which calls upon this Court to determine the extent to which a UM carrier may validly offset the UM limits applicable to a particular UM insured by amounts paid on behalf of the driver of an underinsured vehicle. This Court reaffirms prior holdings permitting the offset with regard to liability benefits actually received by the UM insured, but we decline to extend the right of offset to liability benefits paid to parties other than the UM insured, including other guest passengers. This Court accordingly affirms the trial court's ruling.

### II. STATEMENT OF THE FACTS AND CASE

¶2. On September 11, 1989, Tracy Earnest (Tracy) and two other passengers were killed in a single car accident involving a vehicle driven negligently by Charles Anthony Plunkett. Plunkett was covered under a liability policy issued by Fidelity & Guaranty Underwriters, Inc. (F&G), which policy provided for $50,000.00 single limits liability coverage and $25,000.00 in uninsured motorist (UM) coverage. Although all three of the passengers were considered class II UM insureds under Plunkett's policy, Tracy was the only one of the three passengers with regard to whom Plunkett's automobile

was considered to be an uninsured vehicle. Tracy obtained this status through the stacking of the $25,000 F&G UM limits with the $45,000 in UM benefits in State Farm policies obtained by her father, John Earnest, in whose household she resided and under whose policies she thus enjoyed the status of class I insured.

¶3. At a conference between plaintiff and defense counsel on December 11, 1989, F&G offered to pay one-third of the $50,000 in liability coverage to each of the three passengers, but it denied any liability for UM benefits. State Farm accepted liability for $20,000 in UM benefits and tendered the amount into the registry of the Circuit Court. Dissatisfied with this result, John Earnest filed suit against F&G and State Farm, alleging bad faith on the part of F&G.

¶4. State Farm was granted summary judgment on November 10, 1994 by the circuit judge, who found that State Farm's tender of $20,000 in UM benefits relieved it of any additional liability for UM payments. The trial judge found that F&G was liable for $8,333.33 in UM benefits, however, which amount he arrived at by subtracting the $16,666.67 in liability benefits paid to Earnest from the $25,000 applicable limits of F&G's liability policy. The judge granted partial summary judgment to F&G with regard to Earnest's claim for punitive damages. F&G timely appealed from the ruling finding it liable for UM benefits, while Earnest cross-appealed from the ruling dismissing his claim for punitive damages as well as from the circuit judge's refusal to grant him the full $25,000 in UM limits under the F&G policy. State Farm reached a settlement with Earnest and the appeal was dismissed with regard to State Farm.

## III. DIRECT APPEAL - ISSUES

**I. Whether Tracy Earnest was an underinsured motorist as to F&G, when (1) F&G was primary and had $50,000 liability coverage and $25,000 uninsured coverage; (2) F&G paid $50,000 under its liability coverage but only $16,666.67 to Tracy Earnest; and (3) F&G's policy allowed it to offset uninsured coverage by all sums paid under its liability coverage.**

**II. What is the extent of F&G's uninsured obligation to Tracy Earnest?**

**III. Whether the trial court correctly granted summary judgment to F&G on the plaintiff's "bad faith" claim.**

## CROSS-APPEAL ISSUES

**A. Whether F&G should have paid Earnest $25,000 in uninsured benefits from its policy covering the automobile involved in the wreck.**

**B. Whether F&G should pay Earnest $16,666.67 in liability benefits from its policy covering its driver in addition to any uninsured benefits determined to be due under the F&G policy.**

**C. Whether F&G's actions in refusing to pay Earnest any uninsured benefits due under the F&G policy creates a jury issue on bad faith.**

## IV. <u>LAW</u>

¶5. The parties cite a number of points of error on appeal and cross appeal in the present case, but the points of error all deal with the issues of what, if any, amount of UM benefits F&G owes to Earnest under the facts of the present case and whether the trial judge properly dismissed Earnest's bad faith suit against F&G. As noted earlier, tortfeasor Plunkett was insured under a liability policy issued by F&G, which policy provided for $50,000.00 single limits liability coverage and $25,000.00 in UM coverage. While the other passengers in the car were not insured under any additional UM policies, Tracy was properly considered a Class I insured under three State Farm policies covering her father's (in whose household she resided) vehicles and totaling $45,000 in UM coverage.

¶6. Tracy's representatives were properly permitted to stack the $45,000 with the $25,000 in UM coverage contained in the F&G policy for a total of $70,000 in applicable UM coverage. F&G asserts that it has no liability for UM benefits in the present case, given that its policy permits it to offset the full $25,000 of UM coverage in its policy by the $50,000 in liability payments which it made on behalf of the tortfeasor in the present case. F&G argues that it is of no consequence that only $16,666.67 in liability payments were made to Earnest, given that its policy language does not limit offsets to amounts of liability payments made to the UM insured.

¶7. John Earnest, on the other hand, argues that he is entitled to the full $25,000 in UM benefits under the F&G policy and that F&G should be entitled to no offset for liability payments in the present case at all. Earnest makes this argument in spite of authority to the contrary permitting the offset of liability payments made to a particular UM insured in determining the extent of a UM carrier's liability. ***State Farm Mut. Auto. Ins. Co. v. Kuehling***, 475 So.2d 1159, 1163 (Miss. 1985). It is thus apparent that neither F&G nor Earnest is satisfied with the circuit judge's ruling in granting Earnest $8,333.33 in UM benefits, i.e., the difference between the $25,000 UM limits of the F&G policy and the $16,666.67 in liability payments made by F&G to Earnest. This Court concludes, however, that the trial judge's ruling with regard to F&G represents a correct application of the UM law of this State.

¶8. The offset provision in F&G's policy is exceedingly broad, purporting to grant F & G the right to offset against payments made on behalf of the tortfeasor regardless of which party made the payments and regardless of to whom the payments were made. Earnest initially attempts to argue that the policy language in question does not grant F&G the right to offset against the full $ 50,000 in liability payments which it made under the liability portion of the policy. This argument is without merit. The F &G policy clearly provides that:

> C. Regardless of whether A or B applies, the limit of liability shall be reduced by all sums paid because of the "bodily injury" or "property damage" by or no behalf of persons or organizations who may be legally responsible. This includes all sums paid under part A of the policy.

Under this policy language, F&G purports to reserve itself the right to not only offset against all sums paid by itself under the liability portion of its policy but also to offset against liability payments made by other "persons or organizations who may be legally responsible.[1]" Clearly, this policy language does not limit F&G to offsetting payments paid by itself to the UM insured.

¶9. The question arises, however, as to whether this offset provision is contrary to the policy

considerations behind this State's uninsured motorist scheme. Most of the offset provisions which have been discussed in previous cases have provided for a more limited right of offset than that which F&G purports to reserve for itself in the present case, and no policies have been applied in the expansive manner urged by F&G in the present case. In *Kuehling*, this Court established the right of a UM insurer to offset for liability payments made to the insured, holding that:

> Therefore, State Farm is entitled to offset the total of its uninsured motorist coverage by the $10,000 settlement awarded to appellee from the tortfeasor's insurance company. The insurance company is bound to pay only that amount which constitutes the difference between policy limits available under an insured's own policy and that amount received from one underinsured.

*Kuehling*, 475 So.2d at 1163. This Court's holding in *Kuehling* was based on the language of the State Farm policy, which, unlike F&G's policy in the present case, focused on the payments received by the UM insured rather than on the amounts paid on behalf of the underinsured motorist.

¶10. The more recent case of *Wickline v. U.S. Fidelity & Guar. Co.*, 530 So.2d 708 (Miss. 1988) involved policy language virtually identical to that in the present case, as well as a fact pattern highly reminiscent of that herein. In *Wickline*, Stacy Wickline was killed while a passenger in a car driven negligently by a party insured under a policy issued by USF&G. The USF&G policy provided liability and uninsured motorist coverage in the amount of $10,000 per person and $20,000 per accident. Unlike in *Kuehling*, Wickline's damages exceeded the amount of insurance available, as Earnests' damages do in the present case. As in the present case, Stacy was also insured under UM policies issued by State Farm to her family, which policies were stacked with the UM coverage available under the USF&G policy to qualify the tortfeasor as an uninsured motorist with regard to her. *Wickline*, 530 So.2d at 717. This Court permitted the offset of the $10,000 in liability payments in *Wickline*, thus reaffirming the right of a UM carrier to offset liability payments made to a particular UM insured.

¶11. The crucial distinction between *Wickline* and the present case is that, in *Wickline*, the full $10,000 in liability payments were made to Wickline, while only one-third of the $50,000 in liability payments were made to Earnest in the present case. *Id.* Thus, although the policy language in the two cases is virtually identical, USF&G did not argue in *Wickline* that it should be allowed to offset with regard to liability payments made to any party other than the UM insured. F&G does not cite a single decision in which this Court has permitted an offset with regard to liability payments made to a party other than the UM insured, and it is thus clear that F&G is seeking an expansion of the right of offset in the present case.

¶12. The extent of a UM carrier's right to offset is to a certain degree dependent upon the provisions providing for the offset in the UM insurance contract. In *Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 614 So.2d 918 (Miss. 1992), for example, this Court held that, under the provisions of Dixie's own policy, Dixie only had a right to offset liability payments which it itself had made. Accordingly, this Court held that the policy provision granted Dixie no right to offset liability payments made by State Farm. The holding in *Dixie* thus indicates that this Court will not infer a broader right of the insurer to offset when the language of the insurer's own policy provides for a more narrow right of offset than that for which it might legally provide. This Court in *Dixie*, however, considered policy language which served to limit, rather than expand, a UM carrier's right

of offset, and this Court was not faced with a challenge to the statutory minimum limits of UM coverage as in the present case. This Court has shown a limited amount of deference to the freedom of carriers to "contract" with insureds, although auto insurance policies are rarely negotiated "contracts" in the typical sense of the word. This Court wrote in *Kuehling* that:

> Section 83-11-111 allows insurers to contract with regard to excess coverage so long as the Mississippi rules regarding exclusion and stacking are not violated. The policy provision to which the parties in this suit contracted does not violate such rules nor does it act to reduce the coverage required by the statute. 475 So.2d at 1162.

This Court in *Kuehling* thus affirmed the right of carriers to contract with regard to UM benefits as long as our stacking case law and the minimum coverage required by statute were not violated.

¶13. However, this Court concludes that the application of F&G's policy in the manner in which it urges would serve to reduce the minimum coverage required by statute as recently defined by this Court in *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658 (Miss. 1994). The use of offset provisions to escape statutory minimum levels of UM coverage has been rejected by this Court in other contexts, including the offset of workers compensation benefits in *Garriga* and medical payment benefits in *Talbot v. State Farm Mut. Auto. Ins. Co.*, 291 So.2d 699 (Miss. 1974). In both of these cases, this Court held that the carrier was not free to so contract, and this Court reaches a similar result with regard to the application of the offset provision in the manner in which F&G seeks in the present case.

¶14. This Court held in *Garriga* that the statutory minimum limit of UM coverage was not the $10,000/20,000 amounts set forth in the Safety Responsibility Act, but rather "the coverage that the insured chooses up to that amount equal to the liability amount acquired." *Garriga*, 636 So.2d 658, 664 (Miss. 1994). In the present case, Tracy Earnest had applicable to her $25,000 in UM coverage from F&G and $45,000 in coverage from State Farm[2]. Therefore, with regard to F&G, Earnest's statutory minimum amount of UM coverage is $25,000. As noted earlier, John Earnest argues that he should be entitled to the entire $25,000 in UM benefits and that F&G should not be entitled to any offset at all.

¶15. Earnest contends that *Garriga* indicated an intent on the part of this Court to abolish the offset of liability payments altogether, or at least to the extent that they serve to lower what would otherwise be considered the statutory minimum amount of UM coverage. Earnest's argument calls for nothing less than the overruling of the entire right of offset established by this Court in *Kuehling* based upon a misinterpretation of this Court's opinion in *Garriga*. Although the issue of the validity of the liability offset was not before this Court in *Garriga*, this Court in said case permitted an offset of $10,000 in liability payments made to the insured. This Court's refusal to allow the offset of worker's compensation benefits in *Garriga* indicated no intent to overrule *Kuehling*, and this Court expressly reaffirms *Kuehling* herein. This Court determines, however, that the holding in *Kuehling* should not be extended to permit an insurance carrier to offset for payments made to parties other than the insured.

¶16. F&G argues that the application of the policy language in the present case is supported by this Court's decisions in *Washington v. Georgia American Ins. Co.*, 540 So.2d 22 (Miss. 1989)and *Cossitt v. Federated Guar. Mut. Ins. Co.*, 541 So.2d 436 (Miss. 1989). *Washington* and *Cossitt*

stand for the proposition that, in determining whether a tortfeasor is properly considered to be an uninsured motorist with regard to a particular UM insured, the limits of the tortfeasor's liability insurance should be compared to the stacked total of UM benefits applicable to the UM insured. This Court, in *Washington* and *Cossitt*, elected to take this approach rather than the approach of comparing the stacked UM total to the amount actually available to the insured, which, this Court conceded, was the fairer and more equitable approach but which, this Court noted, was not supported by the "limits versus limits" language of the UM statutes. *Washington*, 540 So.2d at 26.

¶17. This Court wrote in *Cossitt* that:

> Without doubt, the Mississippi Uninsured Motorist Act provides that the tortfeasor is neither uninsured nor underinsured as to Jan Cossitt. Admittedly, such a conclusion creates an unfortunate and anomalous result, i.e. Jan Cossitt would be better off had she been injured by a tortfeasor who had no insurance at all because in that situation she could receive the full amount of her uninsured motorist coverage. ... But the law is full of anomalies, and we are better off with an anomalous result than with judicially rewriting the statute in order to cure the anomaly.

*Cossitt*, 541 So.2d at 440.

¶18. It is a very important distinction, however, that Miss. Code Ann. § 83-11-103(c)(iii), as well as this Court's decisions in *Washington* and *Cossitt*, deal with the issue of whether a particular tortfeasor is properly considered to be an uninsured motorist, but *not* with the issue of the amount of recovery that is available to the tortfeasor once a particular motorist is classified as uninsured. § 83-11-103(c)(iii) provides that:

> (c) The term "uninsured motor vehicle" shall mean:
>
> (iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage ...

*Washington/Cossitt* are dispositive in the present case with regard to the other two guest passengers in question[3], but it is undisputed that the tortfeasor in the present case is properly considered an un(der)insured motorist with regard to Tracy Earnest. Earnest met the initial eligibility requirements for triggering UM coverage, and the only remaining issue is the amount of UM benefits available to her. This issue is not addressed by statute, and this Court is therefore not bound to the "anomalous" result forced upon us in *Washington/Cossitt*.

¶19. There is precedent in our State's UM law for establishing a more liberal standard with regard to the amount of recovery available to a UM insured than for determining initial eligibility for UM benefits. In *Thiac v. State Farm Mut. Auto. Ins. Co.*, 569 So.2d 1217, 1220 (Miss. 1990), this Court held that, for purposes of determining whether a given vehicle is underinsured, "we look no further than the guest passenger's own coverage and the coverage on the host vehicle." This Court in *Thiac* reaffirmed an earlier holding in *Wickline*, however, that, once a given vehicle is determined to be underinsured, the amount of recovery available to the insured is determined by stacking not only the guest passenger's coverage and the coverage on the host vehicle, but also other vehicles covered by the host's policy. *Thiac*, 569 So.2d at 1220-21. This Court's decision today thus establishes a

more liberal "fund" for recovery by a UM plaintiff who has met the statutory UM eligibility requirements in a manner similar to that adopted by this Court in *Wickline/Thiac.*

¶20. The establishment by this Court of differing standards for initial eligibility for UM benefits than for the "fund" available for recovery by the UM is based in part upon the interaction of the policy considerations behind this State's uninsured motorist scheme and the specific statutory provisions relating thereto. This Court has shown deference to the plain language of statute when the language clearly serves to limit recovery on the part of a UM insured. See: *Cossitt*; *Thiac*; *Medders v. U.S. Fidelity & Guar. Co.*, 623 So.2d 979, 989 (Miss. 1993). At the same time, however, this Court has consistently interpreted and construed the UM statutes from the perspective of the insured with an awareness of the public policy considerations which undergird our UM scheme.

¶21. In the present case, there is no apparent reason, statutory or otherwise, why the $70,000 in UM benefits applicable to Earnest should be reduced by sums paid to third parties where Earnest received no benefit whatsoever from the fact that the payments were made. The holding which F&G urges this Court to make would permit the reduction of UM benefits even in cases in which another carrier or the tortfeasor himself made liability payments to a party other than the UM insured. State Farm's policy in the present case did not contain the expansive offset language present in the F&G policy[(4)], but if it had, then an enforcement of the language would grant State Farm the right to offset amounts owed to its own insured by amounts paid by a totally unrelated carrier to totally unrelated parties.

¶22. There can be no justification for such an anomalous result, and this Court should not permit the offset sought by F&G, including in cases such as the present one, where the liability payments in question were made by F&G but to parties other than the UM insured. This Court has consistently endeavored to interpret our UM laws from the perspective of the insured, and it would be contrary to this approach to reduce limits applicable to a particular UM insured by amounts paid to another party. It is of no consequence to a party injured by a negligent driver whether amounts paid on behalf of the tortfeasor were paid by her carrier or by another carrier: the result of increasing the amount of injuries which must go uncompensated is equally harsh regardless if an offset is permitted for sums paid to third parties. The central issue for any UM insured with regard to liability benefits is whether or not the benefits were paid to her, and this is the basis on which this Court has interpreted liability offsets in the past and on which we do so today.

¶23. This Court based its creation of the right to offset for liability payments in large part upon an analysis of the actual benefits which would be received by the UM motorist. This Court wrote in *Kuehling* that:

> However, if offset were not permitted, where the insured had $20,000 uninsured coverage and the tortfeasor has only $10,000 in liability, the insured would receive a total of $30,000. Thus under Kuehling's theory and the lower court's ruling, she is entitled to higher limits of liability whenever the tortfeasor is partially insured than she would be if the tortfeasor is completely uninsured or insured for equal amounts.

*Id.* at 1162. This Court in *Kuehling* thus concluded that such an increased recovery on the part of the insured in cases involving underinsured motorists was not intended by the State Farm policy, nor, more importantly, by the Legislature in enacting the 1979 amendments to the UM statute providing for underinsured motorist coverage.

¶24. This rationale of avoiding an increased recovery on the part of an underinsured motorist as compared to an uninsured motorist is not applicable to the present case. Any increased recovery on the part of Earnest based on the fact that she received some liability benefits as opposed to none at all is avoided by the application of the offset for the $16,666.67 in liability benefits received by Earnest[(5)]. Any additional offset above this amount serves to reduce the amount of UM coverage applicable to Earnest in a manner in which this Court has not approved of in the past and which we expressly reject today.

¶25. There are important statutory indications that the Legislature intended to limit the liability offsets to amounts paid to the insured. It is noteworthy that § 83-11-103(c)(iii) provides that a vehicle is properly considered to be uninsured "when" the applicable liability limits are less than the applicable UM limits. The Legislature could have provided that a vehicle was uninsured "to the extent that" the liability limits were less than the applicable UM limits, but it did not do so. Moreover, this Court noted in *Kuehling* that the Legislature in 1979 had actually deleted language which provided that a vehicle will only be considered uninsured "for that amount between the limit carried and the limit required in section 83-11-101." *Kuehling*, 475 So.2d at 1162. This Court considered this deletion to be unpersuasive with regard to the issue in *Kuehling*, but this Court considers the deletion to be another indication that the "limits versus limits" analysis in § 83-11-103(c)(iii) should be considered relevant only in determining initial eligibility for UM benefits rather than the actual amount of recovery available to an insured.

¶26. The most significant indication that this Court's holding herein is consistent with statute is the complete absence of any statutory right of offset at all, unlike under the UM scheme of some states. Prior to this Court's decision in *Kuehling*, no such offset was available at all, and it can not be validly argued that this Court's opinion herein is contrary to statute when no statutory right for an offset is provided at all. If the Legislature had wished to provide UM carriers with an expansive right to offset in UM cases (or any right, for that matter), then it could have provided for such a right, but it did not do so. The absence of such a provision has left this matter to the interpretation of this Court, and we have provided for a limited right of offset for payments made to the UM insured.

## V. <u>CONCLUSION</u>

¶27. Specifically, this Court holds that, assuming that a tortfeasor qualifies as a uninsured motorist with regard to a particular UM insured under *Washington/Cossitt*, the UM insured's carrier may only validly offset the amount of UM benefits available to the insured by the amount of liability benefits actually received by the UM insured. In this context, "actually received" includes within its scope liability payments which have been tendered by a liability carrier or which are otherwise available to the UM insured.

¶28. Under the facts of the present case, F&G may therefore properly offset its $25,000 UM limits applicable to Earnest by the $16,666.67 in liability payments made to the insured, for a total liability of $8,333.33 in UM benefits owed to Earnest by F&G. The trial court's ruling granted Earnest this very amount in UM benefits and is accordingly affirmed[(6)]. Earnest has tacitly conceded in subsequent arguments before this Court that a remand for a consideration of punitive damages against F&G would not be appropriate in the present case[(7)], and the trial court's dismissal of the bad faith suit is also affirmed.

¶29. **DIRECT APPEAL: JUDGMENT IS AFFIRMED. CROSS-APPEAL: JUDGMENT IS AFFIRMED.**

**LEE, C.J., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. MILLS, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶30. The majority misses the mark in determining that F&G is entitled to offset the $16,663 in liability benefits it paid to John Earnest against the $25,000 in uninsured motorist benefits he is also entitled to receive from the insurer as compensation for his daughter's death. To so find is contrary to the public policy behind our uninsured motorist law as well as to the purposes of allowing the insurer's offset. Accordingly, I dissent.

¶31. Tracy Earnest and two other passengers were killed in a single car accident solely caused by the negligence of F&G's insured, Charles Plunkett. F&G now seeks to limit its contractual obligations by reducing its UM benefit payment to Earnest's survivors by the amount paid out in liability benefits to all three victims. The majority's finding that F&G may offset only the liability benefits paid on Tracy's behalf does not, however, properly limit the insurer's right to offset.

¶32. Our uninsured motorist statute is intended to provide an injured insured with the benefits he is legally entitled to recover for bodily injury or death from the owner or operator of an uninsured vehicle. Miss. Code Ann. § 83-11-101. The insurer's right to offset as set out in *State Farm Mutual Insurance Co. v. Kuehling*, 475 So. 2d 1159, 1162 (Miss. 1985) is to prevent unjust enrichment. Allowing F&G, in this instance, to set off what it paid in liability benefits against what it still owes in UM benefits, where Tracy's aggregated UM benefits totaled $70,000 and damages for loss of her life would be well in excess of that figure, serves neither purpose. Absent the scenario in *Kuehling*, where the benefits paid exceeded the stipulated damages, the insurer should not be entitled to a setoff until the injured insured or her heirs or estate has received all of the funds to which she is legally entitled. *See Dunnam v. State Farm Mutual Automobile Insurance Co.,* 366 So. 2d 668, 672 (Miss.1979)(plaintiff legally entitled to full recovery of amount of judgment in her favor before insurer entitled to subrogation).

¶33. It is of further concern to me that in those instances, such as in the case *sub judice*, where a single insured is responsible for injuries sustained by several parties, the right to setoff, as articulated in the majority opinion, would encourage an insurer to select, to its advantage, how injured parties were compensated. Not all insurers would use the equitable method employed by F&G of dividing

the liability insurance benefit equally amongst the three accident victims. Allowing an insurer to set off what he has paid in liability benefits to an injured party against what he also owes to that party in UM benefits would, for example, permit the insurer to pay $30,000 to Victim A and only $10,000 each to Victims B and C. If only Victim A was entitled also to any UM benefits, the insurer could then offset the $30,000 against that amount, leaving Victim A unable to recoup any UM benefits and Victims B and C even more grossly under-compensated.

¶34. Because of my concern that the majority has not sufficiently narrowed the insurer's right to offset so as to allow the injured insured to receive the full amount to which she is entitled, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. In the present case, the offset provision in State Farm's UM policy was less broad than that in the F&G policy, providing in part that: "A. Any amount payable under the section (U.M.) For bodily injury shall be reduced by (1) Any amount paid or payable to or for the insured."

2. State Farm tendered $20,000 in UM coverage and reached a settlement with Earnest with regard to his appeal from the summary judgment issued in their favor by the trial court. State Farm is therefore released from liability in the present case.

3. The other two passengers, unlike Earnest, had no UM coverage applicable to them other than the $25,000 UM coverage in the F&G policy. There was $50,000 in liability benefits applicable to the tortfeasor's vehicle, and they accordingly did not qualify for UM benefits at all under the "limits versus limits" analysis of *Washington/Cossitt* even though they only received $16,666.67 each in liability benefits.

4. The less expansive offset provision in the State Farm policy may have been the result of generosity on the part of State Farm, but this Court considers it more likely that this provision reflects the view of State Farm that the provision represents the full extent of the liability offset available under our UM law. As discussed herein, this Court holds today that this view, if in fact held by State Farm, is the correct one.

5. It is true that in cases such as the present one, in which a guest passenger is injured by the negligence of an underinsured host driver, the passenger may receive both liability and UM payments from the host driver's same auto insurance policy. This fact may increase the amount of UM benefits which the passenger receives as compared to situations in which guest passengers are injured by a negligent driver of another vehicle. This differing result does not dictate a separate rule with regard to these situations, however, given that the public policy provisions and statutory interpretations are basically the same in both cases.

6. It is apparent, however, that the trial court was in error in granting State Farm summary judgment following its tender of only $20,000 in UM benefits, given that Earnest was entitled to a total of $ 53, 333.33 in UM benefits. ($70,000 total applicable UM benefits - $16,666.67 in liability insurance received). Earnest has settled and dismissed its appeal with regard to State Farm, however, and this

issue is therefore not before this Court. The issue of which insurer should be entitled to which portion of the offset in question is similarly not before this Court.

7. Earnest made the representation to this Court based on the fact that F&G's actions occurred prior to this Court's decision in *Garriga*. This Court makes no holding in this regard, but it would be inappropriate to remand for a consideration of punitive damages where the plaintiff has no interest in pursuing the issue further.