**Rickey E. DAVIS, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,
Defendant.**

No. 2:92–cv–143PN.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

June 1, 1993.

Norman W. Pauli, Jr., Hattiesburg, MS, Hugh C. Uhalt, Gothard J. Reck, Uhalt & Reck, New Orleans, LA, for plaintiff.

Robert J. Dambrino, Thomas W. Tyner, Aultman, Tyner, McNeese & Ruffin, Hattiesburg, MS, for defendant.

### MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment. The Court, having reviewed the motion, the response, the briefs of counsel, the authorities cited, and being otherwise fully advised in the premises, finds specifically as follows, to-wit:

### FACTUAL BACKGROUND

On September 30, 1991, the Plaintiff was operating a vehicle owned by his employer, Blue Diamond, Inc., within the course and scope of his employment. At approximately 6:00 A.M. on that morning, he was pulled over by a Mississippi Highway Patrol State Trooper on Highway 13 between Baxterville and Columbia, Mississippi for speeding. After receiving a citation, Plaintiff and the Trooper were each returning to their respective vehicles when another motorist operating his vehicle on the highway at that time, eighty-five year old Samuel Greer, struck the rear of the patrol car, the State Trooper and Plaintiff. As a result of the impact, Plaintiff received crushing injuries to both of his legs which he now asserts has left him totally and permanently disabled.

### STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue,

therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the nonmoving party. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Lit.,* 672 F.2d 436 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods,* 687 F.2d at 119.

## COMPENSATION RECEIVED BY PLAINTIFF

Samuel Greer was insured by Mississippi Farm Bureau under a policy providing $10,000 per person liability limits. The Mississippi Highway Safety Patrol vehicle was self insured with the limits of liability of $10,000 per person. Plaintiff has recovered the policy limits of $10,000 from Greer and $10,000 from the Mississippi Highway Safety Patrol.

Plaintiff has also received more than $154,000 in medical benefits and $17,000 in permanent partial disability benefits under the Worker's Compensation Act from U.S.F. & G., the worker's compensation carrier for Blue Diamond, Inc. U.S.F. & G. also issued a policy of liability and uninsured motorist insurance to Blue Diamond and Plaintiff has sued under that policy asserting his entitlement to uninsured (underinsured) benefits as a result of the accident.

It is undisputed that under the policy issued by defendant, there are thirty (30) scheduled vehicles listed in the policy, with a separate premium for uninsured motorist coverage charged on twenty-six (26) of the vehicles and no separate premium charged on the other four (4). Nor is it disputed that there is no written rejection of UM coverage on the four (4) that are scheduled, but for which no separate premium was charged, as required by Miss.Code Ann. § 83–11–101 (1972).

## DEFENDANT'S CONTENTIONS

The policy lists a "Limits of Liability" for uninsured motorist coverage of $25,000. Defendant claims that under the limitation language contained in the policy, which it asserts is clear and unambiguous, this is the most coverage exposed as a result of this accident. Plaintiff claims that the $25,000 limit applies to each scheduled vehicle for which a separate premium was charged (26 by agreement of the parties), by virtue of stacking which aggregates to $650,000 in coverage plus the statutory minimum of $10,000 per vehicle on the other four for total coverage of $690,000.

Defendant also claims that it is entitled to offset any sums the Court finds it owes to Plaintiff, if any, in excess of statutorily required amounts, by the amount Plaintiff received in liability payments from the other motorists ($20,000 total) and the worker's compensation benefits paid by defendant ($172,000 plus).

## MISSISSIPPI LAW AND "STACKING"

This case concerns the often litigated question of "stacking" of insurance coverage (specifically uninsured/underinsured motorist coverage) under Mississippi law. Since, this

is a diversity action, the Court is of course bound to apply the law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Mississippi law, there are several well settled propositions concerning uninsured motorists coverage. "The uninsured motorist statute is to be liberally construed so as to provide coverage." *Harris v. Magee,* 573 So.2d 646, 651 (Miss.1990), citing *Washington v. Georgia American Ins. Co.,* 540 So.2d 22, 25 (Miss.1989); *Wickline v. U.S. Fidelity & Guar. Co.,* 530 So.2d 708, 711 (Miss.1988); *Stevens v. U.S. Fidelity & Guaranty Co.,* 345 So.2d 1041, 1043 (Miss. 1977). "The purpose of the uninsured motorist statute is to give the same protection to the person injured by the uninsured motorist as the injured party would have if injured by an insured person." *Harris v. Magee,* 573 So.2d at 651. Stacking is "the combining or aggregating of coverages of different policies or of one policy covering separate vehicles for which plural premiums are paid." *Wickline,* 530 So.2d at 711. *See also Government Employees Ins. Co. v. Brown,* 446 So.2d 1002 (Miss.1984). "Stacking is firmly imbedded in our uninsured motorist law", and "... stacking has become a positive gloss upon our Uninsured Motorist Act." *Wickline,* 530 So.2d at 714.

■ A commercial fleet policy is not to be distinguished from a regular auto policy where stacking of uninsured motorist benefits are involved. "[O]ur statutory scheme does not distinguish a 'commercial fleet policy' from any other type of auto insurance policy nor is it defined therein." *Harris v. Magee,* 573 So.2d at 655.

Armed with the above settled Mississippi jurisprudence, this Court must now decide whether stacking is required under the policy at issue in this action.

### STACKING AND LARGE COMMERCIAL FLEET POLICIES

■ Defendant asserts that stacking should not be permitted under the policy at issue because this is a "large commercial fleet policy" and to permit stacking of as many as thirty vehicles would work an unexpected hardship on the insurer because such

a result was not contemplated in the setting of the premium for this coverage. The premium shown on the declaration sheet is $220.00 per year for uninsured motorist coverage. The schedule of automobiles attached to the Declarations sheet show a separate premium of $10.00 or less for 26 scheduled vehicles and no premium for 4 others.

This policy was issued in June 1991, more than a year after *Harris v. Magee, supra,* was decided holding that "commercial fleet" policies were no different than regular auto policies concerning stacking of uninsured motorist coverage. Defendant's argument that "large commercial fleet" policies should not be stacked simply because to do so would lead to a large aggregation of coverage is without support.

Defendant has also argued that, actuarially, the low premium charged indicates a clear contractual intent to limit uninsured motorist coverage to the $25,000 per accident set forth in the declaration sheet. However, Defendant has brought forth no actuarial evidence to support this argument.

### LIMITS OF LIABILITY CLAUSE

Defendant next asserts that its limiting clause in its uninsured motorist endorsement, which attempts to limit uninsured motorist coverage to a total of $25,000 per accident, is clear and unambiguous and thus enforceable. That provision provides:

1. Regardless of the number of "insureds", claims made for vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of UNINSURED MOTORISTS COVERAGE shown in the Declarations. However, no "insured" will be entitled to receive duplicate payments for the same elements of loss.

On the Declarations sheet, under "LIMIT–THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS", $25,000 is the amount shown for "Uninsured Motorists".

In support of this position it cites the recent Mississippi case of *In re Koestler for the Benefit of Koestler,* 608 So.2d 1258 (Miss. 1992). Under the holding in *Koestler,* only the statutorily required minimum UM coverage is absolutely required to be stacked.

The stacking of any coverage contained in the policy in excess of that is subject to limitation under the contractual terms of the policy, if the limiting language is sufficiently clear and unambiguous.

Prior to *Koestler*, the Mississippi Supreme Court seemed to be heading toward the position that when a separate premium had been charged for each vehicle in a single policy or where there were multiple policies, UM coverage would be stacked, regardless of whether or not the insured had purchased only the statutory minimum and/or supplemental coverage. The reasoning was that to do otherwise was against public policy and the Court's previous interpretation of the Uninsured Motorist Act. *See Brown v. Maryland Cas. Co.*, 521 So.2d 854, 856 (". . . uninsured motorist coverage contained in one policy of insurance insuring three vehicles, and for which a separate premium was paid, can be aggregated."); *State Farm Mut. Ins. Co. v. Nester*, 459 So.2d 787, 793 (Miss.1984) (". . . where an insured purchases more than one policy and pays the premiums on more than one policy, that insured is entitled to collect on all such policies."); *Government Employees Ins. Co. v. Brown*, 446 So.2d at 1006, ("Any language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which it has paid a premium.")

However, the charging of separate premiums was early on decided not to be entirely decisive on the issue of stacking. "We also think that charging a separate premium would not necessarily determine the propriety of aggregating, although it is an element to be considered with other aspects of the case." *Pearthtree v. Hartford Acc. & Indem. Co.*, 373 So.2d 267, 270 (Miss.1979). And to be sure, there had been language in some of the cases indicating that while parties are free to contract for coverage in excess of the statutorily minimum required, such would be subject to the terms of the contract, at least according to the Court in *Koestler*. *See Wickline, supra; State Farm Mut. Auto. Ins. Co. v. Kuehling*, 475 So.2d 1159 (Miss. 1985); and *State Farm Mutual Automobile Insurance Co. v. Talley*, 329 So.2d 52 (Miss. 1976).

However, from a reading of the above cases, the majority of the Court seemed to indicate that, regardless of the limiting language, stacking of all UM coverage purchased, whether by separate premiums in a single policy or in different policies, was subject to stacking.

Then along came *Koestler*. This case, in the opinion of this Court is an about-face in the law of stacking of UM liability coverage in Mississippi. Justice Robertson, writing for the majority in a 5–4 opinion, seemed to regard it as a clarification of existing Mississippi law. But without overruling any of the prior stacking cases, this case seems to be an anomaly, if the public policy arguments espoused in those prior cases of getting what the insured paid for are given any weight whatsoever.

This Court is of the opinion that the waters of stacking are now so muddied that if a certification procedure to the Mississippi Supreme Court were available to the district court, this matter would be so certified. However, in the absence of such a procedure, this Court is bound to apply the law of Mississippi to the facts of this case as best it can.

■ An analysis of Mississippi law leads the Court to conclude that Defendant's position that its limitation clause can limit UM coverage to $25,000 is directly contrary to Mississippi law, including *Koestler*. "[S]tatutorily required UM liability coverages are subject to stacking." *Koestler*, 608 So.2d at 1263. In Mississippi, there is currently $10,000 of UM coverage per vehicle required, unless rejected in writing. Miss.Code Ann. § 83–11–101, and § 63–15–3 (1972). Therefore, there is $10,000 of minimum UM liability on the 26 vehicles for which a separate premium was paid as well as on the 4 for which no premium was paid but for which there is no written rejection as required by Miss.Code Ann. § 83–11–101 (1972). This equates to a total statutory minimum coverage of $300,000 (30 vehicles × $10.000). *See Koestler* 608 So.2d at 1262; and also, *Lowery v. State Farm Automobile Insurance Co.*, 285 So.2d 767 (Miss.1973).

◼ Thus, the real question to be resolved by the Court is whether there is *supplemental* UM liability coverage subject to stacking in favor of the Plaintiff. "[T]here is no public policy against limiting insurance coverages. Over and above legally mandated minimums, the parties have always remained free to agree as they wish." *Koestler,* 608 So.2d at 1263. Thus, under the current state of Mississippi law, it is only *supplemental* UM liability coverage that is subject to the limiting clause contained in the policy in question.

◼ "[I]n any insurance contract, unclear and ambiguous language will be construed in favor of the insured." *Government Employees Ins. Co. v. Brown,* 446 So.2d at 1006. Defendant has of course argued that its limiting clause clearly and unambiguously limits UM liability coverage to $25,000 for any one accident. The Court has found this to be contrary to the Uninsured Motorists Act and against public policy regarding the statutory minimum of $10,000 per vehicle. Having done this, is the limiting language sufficiently clear and unambiguous, when taken with the Declarations sheet and automobile schedules, to limit Defendant's UM liability to only the statutory minimum?

Defendant's limiting clause makes no mention of limiting coverage to the statutory minimum. Also, contrary to the limiting clause in *Koestler,* the limiting clause in the subject policy makes no mention of the number of *vehicles* or *premiums* shown in the Declarations. Defendant argues that while its limiting language is "different" than that in *Koestler,* it is equally clear and unambiguous and thus should be enforced. The Court finds that the language of the limiting clause in the subject policy, when viewed with the information contained in the Declarations sheet and the schedule of autos covered along with Defendant's interpretation of that clause, which is contrary to public policy and the Uninsured Motorists Act, is unclear and ambiguous and thus void. The Court finds that there is $15,000 of supplemental UM liability coverage on each of the 26 scheduled vehicles for which a separate premium was paid, or $390,000 in supplemental UM liability coverage when stacked.

## OFFSET OF UM LIABILITY COVERAGE BY WORKER'S COMP PAYMENTS

◼ Defendant next argues that it is entitled to offset supplemental UM liability benefits found to be due Plaintiff by the amount it has paid in Worker's Compensation benefits. Defendant cites a recent case by Judge Barbour of this Court in support of this proposition. Judge Barbour held, in the absence of any Mississippi case on point, that a party in Defendant's position could offset *supplemental* UM liability benefits owed to an injured party by the amount of worker's compensation benefits paid to the injured party. *See Porter v. Shelter General Ins. Co.,* 678 F.Supp. 151 (S.D.Miss.1988). However, in 1989, the Mississippi Supreme Court ruled, in a situation where stacking applied to supplemental UM liability coverage, that a Worker's Comp carrier could not offset against UM liability benefits except to the extent of recovery by the UM liability beneficiary from a third party tortfeasor. *See Cossit v. Nationwide Mut. Ins. Co.,* 551 So.2d 879 (Miss.1989). In *Cossit* there was no recovery from the third party tortfeasor and thus there was no offset allowed. This position was reaffirmed in *Harris v. Magee, supra,* in 1990.

In this case, the Defendant would be entitled to offset, by virtue of the worker's compensation payments, against supplemental UM liability benefits only by the $20,000 received by the Plaintiff from Greer and the Highway Patrol, but for the waiver of such right by Defendant. The defendant is therefore not generally entitled to offset against any UM liability benefits due Plaintiff, up to the limits of its liability, by the amounts it has paid him under the Worker's Compensation Act.

However, the Defendant is correct in pointing out that its policy contains the following limiting language:

> However, no "insured" will be entitled to receive duplicate payments for the same elements of loss.

This Court agrees, that as a matter of public policy, an injured party should not collect twice for the same damages, at least where he has not been personally responsible for the procurement of additional coverage

(such as the purchase of private health insurance, etc.). But, UM liability coverage is designed to allow the injured party to collect all sums to which he would be otherwise entitled to collect from the uninsured tortfeasor. *See Harris v. Magee,* 573 So.2d at 654; and *Wickline,* 530 So.2d at 712. The Court construes this to mean "his full measure of damages" to the extent he can recover them given the amount of coverage available.

Therefore, under the limiting language set forth in the subject policy, if Plaintiff's damages are assessed at an amount greater than the sum of available coverage plus the worker's compensation lien, there would be an offset against his *damages* which would not affect coverage liability. However, if Plaintiff's damages are assessed at an amount less than the sum of available coverage plus the worker's compensation lien, Plaintiff's *damages* would again be offset by the lien, but coverage (Defendant's ultimate liability to pay money) would be affected.[1] Such an offset would only apply to supplemental UM liability coverage.

### OFFSET OF UM LIABILITY BY AMOUNTS RECEIVED FROM TORT-FEASOR

■ Defendant next argues that it is entitled to offset its supplemental UM liability by the amount Plaintiff received from Greer and the Highway Patrol. The limiting language set forth above is the basis for defendant's argument. The Mississippi Court in addressing this issue held that clear language in a policy of insurance can provide for an offset of supplemental UM liability benefits by the amounts received by the injured party from a tortfeasor. *See State Farm Mut. Auto. Ins. Co. v. Kuehling, supra.* However, when reviewing the language in the subject policy and that set forth in *Kuehling,* the Court finds that there is no basis for finding that Defendant is entitled to the requested offset in this case.

The Defendant, having failed to demonstrate that it is entitled to summary judgment as a matter of law or that there is not a genuine issue of material fact for trial, its motion should be denied.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgement is DENIED.

SO ORDERED AND ADJUDGED.

---

1. Example: Assume supplemental coverage of $100,000 and a lien of $10,000. If Plaintiff's damages are assessed at $120,000, Plaintiff's *damages* are offset by the $10,000 lien. Coverage is not affected. If damages are assessed at $105,000, then his *damages* are reduced by $10,000. This only affects coverage to the extent of $5,000. He would still be entitled to collect $95,000.