Calvin P. LAND, Jr., Plaintiff,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Defendant.

No. 2:93–CV–214PS.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Aug. 23, 1994.

Jack Land, Hattiesburg, MS, for plaintiff.

Charles Greg Copeland, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on Cross Motions for Summary Judgment filed on behalf of each of the parties. The Court, having reviewed the motions and supporting briefs, the authorities cited, and being other-wise fully advised in the premises, finds as follows, to-wit;

## FACTUAL BACKGROUND

On or about August 21, 1992, Calvin Land was involved in a motor vehicle accident with Gary Neal Zahn in Texas. At the time of the accident, Land was driving a vehicle owned by him and insured as one of four vehicles insured under a USF & G commercial auto policy issued to Land's farming operation. This policy had uninsured/underinsured motorist coverage (hereafter "UM coverage") of $25,000 covering each of the four vehicles. USF & G stacked these four limits of UM coverage for a total of $100,000 coverage under the commercial policy.

Land also had a personal auto policy with USF & G covering two vehicles with $100,000 UM coverage, neither of which was involved in the accident. USF & G admits that there is $100,000 of UM coverage available to Land under the personal policy but has refused to stack a second $100,000 of UM coverage because of alleged anti-stacking language in the policy which it contends prohibits such a result. The underinsured motorist, Zahn, had liability coverage in the amount of $100,-000 which has been paid to Land by Zahn's insurer, Allstate. It is uncontested that Zahn was at fault in causing the accident and that he was "underinsured", as defined by Mississippi law[1]. USF & G has paid $100,-000 to Land for his injuries. It has admitted coverage for another $100,000 in UM coverage, but has taken an offset in that amount as a result of the payment of the liability limits by the carrier for the negligent motorist, Zahn.

At this point, plaintiff contends that he is entitled to another $100,000 from USF & G by virtue of the severity of his injuries and the alleged requirement that USF & G stack his UM limits under his personal auto policy. Plaintiff argues in the alternative, if defendant's argument is accepted, that the uninsured motorist coverage of the personal policy covered only one auto, that since plaintiff did not reject uninsured motorist coverage on the second auto, the second auto has uninsured motorist coverage of $500,000, the

1. At this point, the defendant contests the total amount of damages suffered by Land.

amount of the liability coverage in the policy, and that this $500,000 should stack. Plaintiff does not argue this alternative ground with convincing force.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Lit.,* 672 F.2d 436, 440 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods,* 687 F.2d at 119.

## MISSISSIPPI LAW ON "STACKING"

This case concerns the oft litigated question of "stacking" of uninsured/underinsured motorist coverages under Mississippi law. Since, this is a diversity action, the Court is of course bound to apply the law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Mississippi law, there are several well settled propositions concerning uninsured motorists coverage. "The uninsured motorist statute is to be liberally construed so as to provide coverage." *Harris v. Magee,* 573 So.2d 646, 651 (Miss.1990), citing *Washington v. Georgia American Ins. Co.,* 540 So.2d 22, 25 (Miss.1989); *Wickline v. U.S. Fidelity & Guar. Co.,* 530 So.2d 708, 711 (Miss.1988); *Stevens v. U.S. Fidelity & Guaranty Co.,* 345 So.2d 1041, 1043 (Miss. 1977). "The purpose of the uninsured motorist statute is to give the same protection to the person injured by the uninsured motorist as the injured party would have if injured by an insured person." *Harris v. Magee,* 573 So.2d at 651. Stacking is "the combining or aggregating of coverages of different policies

or of one policy covering separate vehicles for which plural premiums are paid." *Wickline*, 530 So.2d at 711. *See also Government Employees Ins. Co. v. Brown*, 446 So.2d 1002 (Miss.1984). "Stacking is firmly imbedded in our uninsured motorist law", and "... stacking has become a positive gloss upon our Uninsured Motorist Act." *Wickline*, 530 So.2d at 714.

USF & G relies on the recent Mississippi case of *In re Koestler for the Benefit of Koestler*, 608 So.2d 1258 (Miss.1992) (which has been overruled), for the proposition that anti-stacking language clearly and unambiguously set forth in an insurance policy is enforceable. Under the holding in *Koestler*, only the statutorily required minimum UM coverage, which that Court determined to be $10,000, is absolutely required to be stacked. Under *Koestler* the stacking of any coverage contained in the policy in excess of what it determined to be the statutory minimum is subject to limitation under the contractual terms of the policy, if the limiting language is sufficiently clear and unambiguous.

Prior to *Koestler*, the Mississippi Supreme Court seemed to be heading toward the position that whether there were multiple policies or single policies all UM coverage should be stacked, regardless of whether or not the insured had purchased only the $10,000 minimum or any amount up to the limits of liability. The reasoning was that to do otherwise was against public policy and the Court's previous interpretation of the Uninsured Motorist Act. *See Brown v. Maryland Cas. Co.*, 521 So.2d 854, 856 ("... uninsured motorist coverage contained in one policy of insurance insuring three vehicles, and for

which a separate premium was paid, can be aggregated."); *State Farm Mut. Ins. Co. v. Nester*, 459 So.2d 787, 793 (Miss.1984) ("... where an insured purchases more than one policy and pays the premiums on more than one policy, that insured is entitled to collect on all such policies."); *Government Employees Ins. Co. v. Brown*, 446 So.2d at 1006, ("Any language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which it has paid a premium.") However, the charging of separate premiums was early on decided not to be entirely decisive on the issue of stacking. "We also think that charging a separate premium would not necessarily determine the propriety of aggregating, although it is an element to be considered with other aspects of the case." *Pearthtree v. Hartford Acc. & Indem. Co.*, 373 So.2d 267, 270 (Miss.1979). Cases have gone further and indicated that the charging of a separate premium is not the basis for requiring stacking. Justice Prather speaking for the Court in *Wickline*, *supra*, said

> ... the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.

*Wickline* indicates that regardless of whether separate premiums are paid, stacking is now a part of Mississippi uninsured motorist coverage.[2]

From a reading of the above cases, the majority of the Court seemed to indicate that, regardless of the limiting language, stacking of all UM coverage purchased,

---

**2.** Justice Robertson speaking for the Court in *Koestler*, *supra*, which was overruled by *Garriga*, *infra*, in explaining why separate premiums were not determinative of that case went to great lengths to point out that stacking is a matter of contract, not statutory construction.

> The theory of these cases without exception has been that insurer and insured have entered two or more contracts covering the same eventuality and that the insured may enforce these contracts according to their terms. To be sure, these contracts may have been encouraged by statute, and at times we have found ambiguities and resolved them in the insureds' favor. This does not alter the fact that the legal origin of stacking is contract and not

statute. In addition, these cases all concerned the stacking of mandatory minimum UM coverages, a point of importance as will presently appear.

608 So.2d at 1261. Justice Robertson went further in *Koestler* and pointed out that references in various cases to separate premiums being paid was

> ... but an equitable note undergirding the fairness of the stacking mandated and enforceable by reason of contract.... No particular premium purchases any particular UM coverage beyond the limits of liability language in the policy

608 So.2d at 1264.

whether in a single policy or in different policies, was required.

Then along came *Koestler*. This case, in the opinion of this Court was an about-face in the law of stacking of UM coverage in Mississippi. Justice Robertson, writing for the majority in a 5–4 opinion, seemed to regard it as a clarification of existing Mississippi law. But, without overruling any of the prior stacking cases, this case seemed to be an anomaly if the public policy reasons espoused in those prior cases are given weight.[3]

## THE EFFECT OF GARRIGA

*Koestler* was overruled on March 31, 1994, in an opinion issued on a petition for rehearing in *Nationwide Mut. Ins. Co. v. Garriga,* 636 So.2d 658 (Miss.1994). Because *Garriga* was not a stacking case but only dealt with a worker's comp offset question, defendant contends that *Garriga* does not change the law espoused in *Koestler* that clear and unambiguous language in a policy can limit stacking. True, *Garriga* dealt mainly with the worker's comp offset issue because Nationwide admitted the stacking issue. However, *Garriga* did not limit its holding to worker's comp offset in overruling *Koestler.* For *Koestler,* as did *Garriga,* dealt with the statutorily required minimum coverage, or excess coverage, under the UM statute, Miss. Code Ann. § 83–11–101, et seq. *Garriga* held that the statutory minimum UM coverage is that amount purchased by any particular insured up to the amount of his liability coverage, specifically overruling *Koestler*'s finding that such was the statutorily stated amount of $10,000. *Koestler* appears to have been an anomaly and *Garriga* seems to have wiped it off the slate, even though Justice Banks in *Garriga* quoted extensively from *Koestler* as has this Court in this opinion.

If that is the case, then an appropriate query is can an insurer now ever prevent stacking by the insertion of clear and unambiguous language in a policy of insurance or is it against the public policy of the state? *Garriga* seems to dictate a no answer. The

Mississippi Supreme Court clearly appears to have made a public policy decision that stacking in cases such as this cannot be prohibited by any language in the policy.

> The question hinges on "the common law principle that contracts contrary to public policy are unenforceable, no matter how clear or unambiguous they may be."

636 So.2d at 662. (Citations omitted.)

In order to decide this case, this Court must analyze the effect of *Garriga* which in turn analyzes Section 83–11–101(1) of the MISS.CODE OF 1972 as annotated. Twice in *Garriga* the Court plainly stated that it was determining what Section 83–11–101 mandates as minimum uninsured motorist statutory coverage. The Court in *Garriga* stated

> We have previously observed that our uninsured motorist statutes do not permit insurance contracts which would enable the carrier to contract for less than the minimum coverage. Today we squarely address the question, "What is the minimum?" *Our answer is that the minimum is that amount of coverage that the insured elects up to the amount of liability coverage purchased.*

*Garriga,* 636 So.2d at 659. (Emphasis added.)

> The question before the court is essentially one of statutory interpretation. That is what is the minimum coverage prescribed by statute? An analysis of the statute prescribing the minimum coverage leads inescapably to the conclusion that we misapprehended the minimum in *Koestler.* We now overrule *Koestler* and hold that the minimum required coverage which may not be offset by clauses such as that here involved is the coverage that the insured chooses up to that amount equal to the liability amount acquired.

*Id.* at 664. In essence the dissent of Justice Banks in *Koestler* became the law of the majority in *Garriga.*[4]

---

3. *Koestler* involved a fight between two insurance companies. They had settled with the injured party and were litigating the legal issues among themselves. Justice Sullivan in his dissent pointed out that Justice Robertson wrote the dissent

and then changed his vote and wrote the majority opinion. 608 So.2d at 1264, 1265.

4. In *Garriga* the Court said:

The *Koestler* Court made three basic holdings. First, the Court held that the minimum coverage required under Mississippi uninsured motorist law is $10,000. Secondly, the Court found that stacking of the statutory minimum uninsured motorist coverages is firmly imbedded in Mississippi case law.[5] Thirdly, the *Koestler* Court found that an insurer could by clear and unambiguous language limit its stacking exposure as to any part of the uninsured motorist coverage on each vehicle that exceeded the minimum mandated coverage.

In trying to determine how this case should be decided, under our *Erie* mandate to apply the law as decided by the Mississippi Supreme Court, this Court notes the following additional reasoning set out in *Garriga:*

> This state's law recognizes the general rule that provisions of an insurance contract are to be construed strongly against the drafter.... Any ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage.

*Id.* at 662. (Citations omitted.)

Section 83–11–101(1) provides:

> ... however, *at the option of the insured,* the uninsured motorist limits may be increased to limits not to exceed those provided in the policy of bodily injury liability insurance of the insured or such lesser limits *as the insured elects to carry* over the minimum requirement set forth by this section. (Emphasis added.)

The *Garriga* Court reasoned that since § 83–11–101(1) gives an insured the option of increasing his uninsured motorist coverage up to the amount of his liability coverage, and since this option is given to the insured by statute, that this amount constitutes the statutory minimum. The Court in construing § 83–11–101(1) said:

> It must be read for what it plainly imports, an option given the insured to increase coverage, over which the insurer has no control other than refusal to increase bodily injury liability limits.

636 So.2d at 664.

■ The Court in *Garriga* acknowledged that

> From the beginning, the legislature provided that the parties were free to contract for coverage in excess of that mandated and that such coverage was not governed by the act. Laws of 1966, ch. 524, § 6, now codified as Miss.Code Ann. § 83–11–111 (Supp.1993).[6]

*Id.* at 664. Since § 83–11–101 explicitly provides that the uninsured motorist limits must not "exceed" the limits of liability insurance,

---

See, *Koestler,* 608 So.2d at 1271 (Bank, J. dissenting) ("The problem is that [the majority] accepts as the minimum amount the amount set forth in Miss.Code Ann. § 63–15–3.")
*Id.* at 663.

**5.** This really was not so much of a holding as it was a recognition that this proposition had already been clearly established under previous case law. The *Koestler* Court dealt with the issue of stacking the statutory minimum as if it required no explanation. They approached it matter-of-factly, as if it was just understood that this proposition was already established by Mississippi case law without question and with no need to explain or justify. Specifically, the Court said:

> In the wake of our caselaw, CRE concedes—*as it must*—that it has a minimum liability on each of the five coverages of $10,000.00, or a stacked aggregate of $50,000.00, and it concedes that this point has been settled at least since *Lowery v. State Farm Automobile Insurance Co.,* 285 So.2d 767 (Miss.1973).

608 So.2d at 1262. (Emphasis added.) "These cases are consistent with the view that only statu-

torily required UM liability coverages are subject to stacking." *Id.* at 1263. "As a practical matter, that law of contract enforcement requires that CRE pay at least $10,000.00 under each of the five coverages." *Id.* at 1264. These quotes reflect that the *Koestler* Court clearly understood Mississippi law to require the stacking of the statutorily mandated minimum coverages.

**6.** The insurer and the insured are "free to contract as to uninsured motorist coverage in any respect so long as the *required coverage* is not cut down by the policy provision." (Emphasis added.) *State Farm Mutual Automobile Insurance Co. v. Talley,* 329 So.2d 52, 54 (Miss.1976) (quoting *Talbot v. State Farm Mutual Automobile Insurance Co.,* 291 So.2d 699, 701 (Miss.1974)). "Any attempt to contractually limit an insurer's duty of coverage ... may not be effective to narrow the requirements of ... [the] statute." *State Farm Mutual Automobile Insurance Co. v. Nester,* 459 So.2d 787, 789 (Miss.1984). The Act "allows insurers to contract [as they please] with regard to excess coverage." *Wickline,* 530 So.2d at 717.

and since *Garriga* has determined that the "minimum" is the amount opted for by the insured "up to the amount of liability coverage purchased" there can be no "excess" in a regular policy of liability insurance. According to the holding of *Garriga,* the only "excess" coverage subject to § 83–11–111 is that provided by umbrella policies or in situations involving others than Class 1 insureds. The Court in *Garriga* further spelled this out when it specifically referred to the amendment which provided for underinsured motorist coverage saying: "The amendment makes clear that such coverage is controlled by the statutory scheme and is not ungoverned 'excess' coverage." *Id.*

Referring to a previous federal court decision holding that uninsured motorist benefits could be reduced by workers' compensation payments, the *Garriga* Court held: "The 'Erie guess' made by the *Porter* court that both parties have freedom of contract between the minimum and the liability limits and none above the liability limits is simply wrong. *See, Porter v. Shelter General Insurance Co.,* 678 F.Supp. 151 (S.D.Miss. 1988)." *Id.* at 665.

Defendant argues that *Garriga*'s overruling of *Koestler* does not affect this case. As noted above, *Koestler* made three primary holdings. The first holding in *Koestler* was the only new holding. The other two holdings primarily recognized pre-*Koestler* case law. Clearly, the first holding of *Koestler* that the statutory minimum of uninsured motorist coverage is $10,000 was overruled and is no longer the law. The second primary holding, that is that the statutory minimum must be stacked was, as already noted, really a recognition that such was already the established law in Mississippi, seems to be unaffected by *Garriga.* The third holding of *Koestler,* that is that an insurance company can limit its stacking exposure as to excess

coverage by clear and unambiguous language is not mentioned in *Garriga* and likewise appears to be unaffected. However, that proposition is now moot in this case, and will not be applicable in most cases, since under the holding of *Garriga* excess coverage can only be found in umbrella policies, or perhaps in situations involving others than Class 1 insureds.

■ In the case now before this Court, Land purchased $100,000 of UM coverage on each of the two vehicles insured under his personal auto policy and had a liability limit of $500,000. The statutory minimum coverage in this case, under *Garriga,* is whatever amount that was opted for by Land up to the $500,000 liability coverage. He opted for $200,000. USF & G issued the policy. The statutory minimum coverage in this case, according to *Garriga,* is $200,000. Therefore, there is no excess UM coverage which could be subject to any limiting clause in the policy. He has purchase and is entitled to recover the full $200,000 of UM coverage under his personal auto policy, and the $100,000 paid under his commercial policy, to be offset by the $100,000 liability payment received on behalf of Zahn.

■ The effect of *Garriga* is that stacking of UM coverage now appears to be absolute, except in cases involving umbrella policies or perhaps situations involving others than Class 1 insureds. There appear to be no defenses to it. The statutory minimum is that amount purchased by the insured up to the amount of his liability coverage. It is against public policy and the well settled law of Mississippi for the insurer to contractually limit the required "minimum" coverage. Of course, this approach displaces the semantic arguments involving multiple policies and single premiums, single policies and multiple premiums, or single policies covering multiple vehicles charging a single premium.[7]

---

**7.** For the record, the Court has considered the arguments of the parties concerning the premium issue presented in this case. Summarily, the arguments presented are that Land, at an earlier renewal, was charged a single premium on one vehicle on the policy in issue amounting to $35.00 for $100,000 UM coverage. At the subsequent renewal, that was increased to $41.00. At the next renewal, Land had added another vehi-

cle and USF & G had begun its "single premium" anti-stacking program, it asserts was in anticipation of *Koestler.* The "single" premium for $100,000 UM coverage with two vehicles was $85.00. This was reduced to $75.00 at the next renewal which was consummated some three weeks prior to the accident at issue. Thus, USF & G was in effect charging a single premium for uninsured motorist coverage for two vehicles

Defendant argues that "[t]here is another reason why *Garriga,* a workers' compensation offset case, should not be applied to the present case. *Garriga* is simply not a logical opinion." When defendant must resort to an argument that this Court should not apply a decision of the Mississippi Supreme Court, that argument is almost an admission that plaintiff should prevail. That is outside the prerogative of this Court. This Court is *Erie* bound to follow *Garriga.* However, since the effect of *Garriga* is so far reaching, if a certification procedure to the Mississippi Supreme Court were available to the district courts, this matter would be certified by this Court. However, in the absence of such a procedure, this Court is bound to apply the law of Mississippi to the facts of this case as best it can, which it has done.

Since the foregoing resolves the issues before this Court in this case, this Court does not reach the question of whether the limiting language in defendant's policy is clear and unambiguous under the *Koestler* test. The Court notes, however, that there is considerable difference in the language of the policy involved in this case and the language of the policy before the Court in *Koestler.* It is doubtful that the language in the policy before this Court passes the *Koestler* test. It should be remembered that in *Garriga* the Court quoted from *Koestler* in saying "the common law principles and contracts contrary to public policy are unenforceable, no matter how clear or unambiguous they may be."

Accordingly, the Court finds that the plaintiff, Calvin P. Land, Jr., has an additional $100,000 in UM coverage available from defendant USF & G which has not been exhausted by offset or payment.

IT IS THEREFORE ORDERED AND ADJUDGED that plaintiff's Motion for Partial Summary Judgment is GRANTED and defendant's Cross–Motion is DENIED.

SO ORDERED AND ADJUDGED.

---

that was almost exactly twice what it charged for uninsured motorist coverage for one vehicle. To the extent that the "single premium" "multiple premium" semantics are at issue, this Court resolves that in favor of the plaintiff. He purchased $100,000 of UM coverage on two vehicles. USF & G cannot artfully convert its premium payment scheme to only charge a single premium which takes into consideration an extra charge for additional coverage for other vehicles. Insureds ought to get what they pay for. USF & G sought to greatly reduce its liability (by $100,00 or by one-half) but did not appreciably reduce its premium, if at all. *See Hartford Accident & Indemnity Co. v. Bridges,* 350 So.2d 1379 (Miss.1977).